IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

v.  CRIMINAL CASE NO. 1:22-CR-69-SA

JABARI OGBONNA EDWARDS and
ANTWANN RICHARDSON   DEFENDANTS

ORDER

On April 12, 2023, the Court concluded a two-day hearing on Jabari Ogbonna Edwards' Motion to Suppress [87]. At the end of the hearing, the Court orally denied the Motion [87] and provided specific reasons for its ruling. Edwards thereafter filed a Motion for Reconsideration [123], which is now ripe for review. Having reviewed the parties' filings, along with the applicable authorities, the Court is prepared to rule.

*Reconsideration Standard*

"Motions to reconsider in criminal cases are judicial creations not derived from any statute or rule." *United States v. Jefferson*, 2022 WL 1001449, at *1 (E.D. La. Apr. 4, 2022) (quoting *United States v. Salinas*, 665 F. Supp. 2d 717, 720 (W.D. Tex. 2009)). "Although the Federal Rules of Civil Procedure do not explicitly authorize motions for reconsideration, district courts possess continuing jurisdiction over criminal cases and are free to reconsider their earlier decisions." *Id*. (citing *United States v. Scott*, 524 F.2d 465, 467 (5th Cir. 1975)). This principle "is applicable to suppression motions." *United States v. Moss*, 2013 WL 55862, at *1 (E.D. La. Jan. 3, 2013) (citing *United States v. Palmer*, 122 F.3d 215, 22 (5th Cir. 1997)).

*Analysis*

Edwards ultimately requests that the Court reconsider its denial of his request for suppression of statements he made during a post-arrest interview. Edwards' request spans multiple

issues. But, in general, overarching terms, he emphasizes that the Court should disregard the testimony of SIGTARP Agent Dietrick Bohmer, in addition to reconsidering the evidence supporting his contention that he invoked his right to counsel. Additionally, Edwards contends that his Sixth Amendment rights were violated when the Court did not permit Wilbur Colom, Esq. to act as Edwards' counsel at the hearing. Finally, Edwards requests, in the event the Court rejects his arguments for reconsideration, that he be permitted to pursue an interlocutory appeal. Some of these issues are interconnected, but the Court will, after explaining a preliminary matter, attempt to address each of Edwards' arguments separately.

I.   *Preliminary Matter*

Because it underlies much of the basis for Edwards' request, the Court will begin by explaining certain policies of the Department of Justice and the Department of Treasury pertaining to arrests and interviews.

At the suppression hearing, multiple SIGTARP agents testified to the fact that SIGTARP falls within the purview of the Department of Treasury—not the Department of Justice. Edwards provided no contrary evidence on this issue at the hearing and does not appear to oppose that particular fact in the present filing.

Edwards has provided the Court with a copy of a DOJ Policy regarding "electronic recording of statements" (the "DOJ Presumption Policy"). [133], Ex. 2 at p. 1. In pertinent part, the DOJ Presumption Policy provides:

> This policy establishes a presumption that the Federal Bureau of Investigation (FBI), the Drug Enforcement Administration (DEA), the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and the United States Marshall [sic] Service (USMS) will electronically record[] statements made by individuals in their custody in the circumstances set forth below.

*Id*.

The DOJ Presumption Policy then sets forth several parameters of the presumption, such as that it only applies to custodial interviews, only applies when suitable recording equipment is available, and does not apply when a person is waiting for transportation to a place of detention. The DOJ Presumption Policy also provides some exclusions to the presumption of recording.

On September 1, 2021, the DOJ issued a press release announcing "the launch of the first phase of its Body-Worn Camera Program that requires department law enforcement personnel use body-worn cameras (BWCs) during pre-planned law enforcement operations." [123], Ex. 5 at p. 1. The announcement noted that the ATF had already complied with the BWC directive and explained that the DEA, FBI, and USMS would begin the first phase of their respective BWC programs "[o]ver the course of the next several weeks[.]" *Id.*[1]

On May 25, 2022, President Biden issued an Executive Order relating to advancing effective and accountable policing and criminal justice practices. In the Executive Order, President Biden issued the following directive to the heads of all federal law enforcement agencies: "As soon as practicable, but no later than 90 days from the date of this order, the heads of Federal LEAs shall ensure that their respective agencies issue policies with requirements that are equivalent to, or exceed, the requirements of the policy issued by the DOJ on June 7, 2021, requiring the heads of certain DOJ law enforcement components to develop policies regarding the use of BWC recording equipment. . ." [123], Ex. 6 at p. 15-16.

Thereafter, on August 29, 2022 (presumably in response to the President's directive), the Department of Treasury, Officer of Inspector General, implemented a Policy (the "OIG BWC Policy") governing the use of BWCs. The OIG BWC Policy provides the following guidance as to when BWCs should be used:

---

[1] The DOJ's implementation of a BWC Policy was consistent with a Memorandum that had previously been circulated on June 7, 2021.

3

> An "enforcement operation" is defined as the planned execution of an arrest warrant or search warrant requiring the use of a Tactical Operational Plan (TOP) (OI Form-39). BWCs will be deployed for all OI enforcement operations. All SAs [special agents] participating in an enforcement operation will be equipped with BWCs. SAs will activate their BWCs to record contacts with individuals during enforcement operations.

[123], Ex. 7 at p. 4.

SIGTARP adopted a BWC Policy (the "SIGTARP BWC Policy") identical to the OIG BWC Policy, likewise mandating that BWCs be worn during an "enforcement operation." Unlike the OIG BWC Policy, the SIGTARP BWC Policy that Edwards provided is not dated. The SIGTARP BWC Policy further provides that it will be fully implemented once all equipment is procured and personnel are trained but that "[i]n the interim SIGTARP will conduct all enforcement operations jointly with other law enforcement agencies and will defer to other law enforcement agencies and their policy in the use of BWC."[2]

## II. Testimony of Dietrich Bohmer

As noted above, Edwards' first argument is that the Court should disregard the testimony of SIGTARP Agent Dietrich Bohmer. Much of Edwards' contention on this point relates to the BWC policies.

The timeline is important. As noted above, on September 1, 2021, the DOJ issued a press release indicating that ATF agents were already utilizing BWCs and that the FBI, among other agencies, would be following suit shortly thereafter. On May 25, 2022, President Biden issued his Executive Order requiring that *all* law enforcement agencies (not just those under the purview of the DOJ) implement BWC policies within 90 days. Edwards was arrested on June 16, 2022—less

---

[2] Edwards claims to have attached the SIGTARP Policy to his Motion [123]. However, it appears that the correct document was not attached. Nonetheless, Edwards provided in his Memorandum [124] a link to the SIGTARP Policy on SIGTARP's website. The Court has reviewed the SIGTARP Policy via the official SIGTARP website.

than a month after President Biden issued the Executive Order. The OIG BWC Policy was signed by Deputy Inspector General Richard K. Delmar on August 29, 2022. *See* [123], Ex. 7 at p. 2. The SIGTARP BWC Policy is identical to the OIG BWC Policy but, as noted above, is not dated. The suppression hearing was held on April 11-12, 2023.

Edwards' argument for the Court to disregard Agent Bohmer's testimony is as follows:

> Agent Bohmer testified that SIGTARP was not required to video record Edwards['] interview or use video surveillance. As with Agent Vignogna, Agent Bohmer's testimony was inaccurate if the U.S. Treasury's BWC Policy and/or SIGTARP's BWC Policy were in effect as of June 16, 2022. Likewise, it was inaccurate because the DOJ's presumption of recording applied since a DOJ employee was part of the operation, Edwards was arrested for federal criminal charges, Edwards was guarded pre-interview by a federal agent, Edwards was detained at a DOJ facility, and Edwards was transported by a U.S. Marshal post-interview[.]

[124] at p. 12.

Edwards continues by asserting that the Court, in issuing its oral ruling at the conclusion of the hearing, failed to adequately address his invocation of his right to counsel in the interview room:

> [T]he Court, in its bench opinion, did not address Edwards' claims that he also invoked his right to counsel at the FBI office prior to the interview and execution of the waiver of rights form. Being that the court disregarded the testimony of Agent Vignogna; Agent Bohmer is the only Government witness who the Court accepted testimony from as to Edwards' invocation of counsel in the interview room. Without his testimony, there is no evidence other than Edwards['] testimony as to a request for counsel once he was in the interview room. Again, the presumption of recording applied per the DOJ's policy and the failure to record preponderates in the favor of Edwards['] testimony that he did in fact invoke his right to counsel in the interview room, prior to the waiver of rights form being executed.

[124] at p. 12-13.

5

Stated simply, Edwards' arguments rest upon assumption. Beginning with the SIGTARP BWC Policy, the Court again notes that it is undated; however, the OIG BWC Policy was implemented on August 29, 2022. Under Edwards' theory, the Court would have to presume that the SIGTARP BWC Policy was adopted over two months prior to the OIG BWC Policy (since Edwards gave the statement on June 16, 2022). In fact, in raising this argument, Edwards himself limits his allegation to Agent Bohmer's testimony being inaccurate only "*if* the U.S. Treasury's BWC Policy and/or SIGTARP's BWC Policy were in effect as of June 16, 2022." [124] at p. 2 (emphasis added). Edwards did not ask Agent Bohmer or any witness about this issue at the suppression hearing and has provided no reason as to why he did not do so. The Court finds it would be inappropriate to now relitigate that issue based upon Edwards' speculation.

Edwards also attacks Agent Bohmer's testimony on the basis that it "was inaccurate because the DOJ's presumption of recording applied since a DOJ employee was part of the operation, Edwards was arrested for federal criminal charges, Edwards was guarded pre-interview by a federal agent, Edwards was detained at a DOJ facility, and Edwards was transported by a U.S. Marshal post-interview." *Id*. Specifically, Agent Bohmer testified as follows:

> Q. Did you attempt to record the interview by video?
>
> A. No.
>
> Q. Why not?
>
> A. Not required to.

[116] at p. 17.

As to the FBI's involvement in the operation, Agent Vignogna's testimony is relevant.[3] When asked about the arrest operation in general, Agent Vignogna testified that "it was a large

---

[3] The Court recognizes, for the reasons articulated at the hearing, that it did not consider SIGTARP Agent Vignogna's testimony in reaching its conclusion as to the suppression issue. In referencing his testimony at

6

scale operation. We had both Lowndes County sheriff's deputies involved. We had the FBI involved, and we had SIGTARP office of -- our agents involved as well." [115] at p. 4. He also testified that FBI personnel were aware that the interview was taking place and offered him recording equipment to record the interview but that he (and Agent Bohmer) declined because they—unlike the FBI—were not required to record the interview. However, quite critically, there was no testimony whatsoever at the hearing to contradict the fact that the only people in the interview room during Edwards' interview were Agent Vignogna, Agent Bohmer, and Edwards. Edwards does not dispute that point.

Edwards makes no contention that SIGTARP had in place a policy similar to the DOJ Presumption Policy. Rather, his argument is that the DOJ's Presumption Policy was applicable and that Agent Bohmer's testimony that he was not required to record the interview was therefore inaccurate. The Court is cognizant of the fact that the interview occurred at an FBI facility and that FBI personnel were, to some extent, involved in the operation. However, Edwards' argument completely ignores the fact that *no* DOJ personnel were involved in the interview. He cites no authority to support his position that the DOJ Presumption Policy would nevertheless apply.

Furthermore, the Court again notes the language of the DOJ Presumption Policy:

> This policy establishes a presumption that the Federal Bureau of Investigation (FBI), the Drug Enforcement Administration (DEA), the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and the United States Marshall [sic] Service (USMS) will electronically record[] statements made by individuals *in their custody* in the circumstances set forth below.

[133], Ex. 2 at p. 1 (emphasis added).

---

this juncture, the Court does not alter that decision but simply notes the background information (unrelated to the ultimate conclusion) that he provided during his testimony.

As this language makes clear, it places a requirement on the FBI, DEA, ATF, and USMS to record statements of individuals in *their* custody. Here, Edwards was arrested by and interviewed by SIGTARP Agents. To contend that Edwards was in the custody of any agency other than SIGTARP is a stretch.

Ultimately, the Court rejects Edwards' argument that the SIGTARP Agents—while conducting an interview involving only SIGTARP Agents—were required to comply with the policy of another agency. Such an argument is far-reaching and, notably, was not supported in Edwards' Memorandum [124] by any authority. Further, the Court notes that, even if Agent Bohmer's statement on that topic was incorrect, it would not serve as a basis to wholly exclude and disregard his testimony.

Finally, the Court notes Edwards' last contention on this point, which is essentially that, should the Court disregard Agent Bohmer's testimony, there would be no testimony to support the conclusion that Edwards waived his right to counsel in the interview room. Stated differently, the only testimony left would be that of Edwards, who testified that he did request an attorney in the interview room. The Court has already declined to disregard Agent Bohmer's testimony. As noted in the oral ruling, the Court is of the opinion, based upon all the testimony provided, that Edwards did not act in a manner consistent with having invoked his right to counsel.

In short, the Court sees no need to disregard the testimony of Agent Bohmer. Edwards' argument on that point is rejected.

### III.    *Invocation of the right to counsel*

Edwards next argues that "[i]f this Court reconsiders Edwards' Motion [Dkt. #:87] and the evidence, it will find that the evidence shows Edwards requested, at the scene of the arrest, of the agents to call his attorney. This finding is based on Edwards['] testimony." [124] at p. 13. As this

8

quoted language makes clear, this argument is based upon Edwards' alleged invocation of his right to counsel at the scene of the arrest—not during the interview at the FBI office. Edwards then rehashes the evidence presented at the hearing, asserting as follows:

> The Court will find that Edwards asked Mr. Smith and Ms. Daniels to ask his wife to call his attorney, Wil Colom. This finding is based on Edwards, Smith and Daniels' testimonies.
>
> The Court will find that Deputy Richardson heard Edwards say "call Colom." This finding is based on Deputy Richardson's testimony.
>
> The Court will find that Agent Bohmer was not present at the scene of the arrest for the entire arrest so he cannot accurately testify as to what all was said when he was not present. Further, his testimony is not credible in light of it being contradicted by Agent Morimoto. This finding is based on Bohmer and Morimoto's testimonies.
>
> The Court will find that Agent Morimoto simply could not remember if Edwards requested an attorney at the scene of the arrest. Agent Morimoto made it clear that he was not testifying that Edwards did not request his attorney. This finding is based on Agent Morimoto's testimony.

[124] at p. 13-14.

As an initial point, the Court notes that these contentions are simply reassertions of arguments that were raised at the suppression hearing or recharacterizations of evidence that the Court itself heard and weighed. In fact, the Court addressed these facts in its oral ruling. For instance, as to Smith and Daniels, the Court explained issues associated with their credibility:

> But, clearly, Ms. Daniels and Rashad Smith's affidavits differ from what they said. The affidavits do not clearly and unequivocally state that Mr. Edwards asked them to contact my attorney, Mr. Wil Colom; yet here in court they say that. So that is a concern for the Court that that testimony is disputed. It's not the same as what's in the affidavit.

[121] at p. 3.

9

Furthermore, setting aside that fact, the biggest shortcoming with Edwards' argument is that he ignores the fact that the Court did indeed find that he stated "call Wil Colom." However, the Court held that he did not unambiguously or unequivocally state "call my attorney, Mr. Colom." Specifically, the Court ruled, in pertinent part:

> But I feel certain from -- from hearing the testimony -- which Deputy Richardson stated as well as Mr. Edwards and these two defense witnesses, Smith and Daniels. I believe from the testimony that Mr. Edwards did, indeed, say call my wife, check on my son, and call Mr. Wil Colom. But I find the testimony is in dispute and certainly is not unambiguous or unequivocal that he said, "Call my attorney, Mr. Colom."
>
> Mr. Edwards' conduct and his actions following a statement to Deputy Richardson at the home would not be consistent with having asked for counsel to be present before he gives any statements or makes any comments.

[121] at p. 4.

Additionally, as emphasized in the Court's oral ruling, Edwards did not conduct himself in a manner consistent with somebody who had invoked his right to counsel or wished to speak to his counsel before talking to the Agents.

The Court sees this argument as a non-starter. It is rejected.

IV. *Counsel of the Defendant's Choosing*

Next, Edwards avers that his Sixth Amendment rights were violated because Wilbur Colom, Esq. was prohibited from participating as Edwards' counsel at the suppression hearing.

The Court notes that, on July 13, 2023, the Government filed a Motion for Hearing [137], wherein it set forth potential conflicts of interests associated with Colom. In that filing, the Government represented that it "raised [the conflict of interest] issue with all defense counsel of record during a teleconference on July 10, 2023. While defense counsel have not stated to the government that a conflict of interest exists, they have agreed that the matters should be brought

before the court for further decision." [137] at p. 6. The Court has since scheduled a hearing on that Motion [137] for August 4, 2023. At that time, the Court will address the conflict of interest issue in greater detail and make an appropriate ruling. In light of that fact, the Court sees no need to make any further findings on this issue at this time.

V.    *Interlocutory Appeal*

Lastly, in his Motion [123], Edwards articulates the following argument:

> In the event this Honorable Court does not reconsider its Order denying the Motion to Suppress Alleged Incriminating Statements . . . Edwards request[s] the Court certify its Order under Rule 54(b) as a final judgment, finding that there is no just reason for delay, so that Edwards may file permission [sic] for an interlocutory appeal to the Fifth Circuit Court of Appeals.

[123] at p. 4.

The Court first notes that this contention is raised in Edwards' Motion [123] but does not appear in his supporting Memorandum [124]. He likewise provides no legal authority to support his request. The Court additionally emphasizes that the request as written requests that the Court grant him an opportunity to pursue an interlocutory appeal if it does not reconsider its original ruling. In this Order, the Court has in fact reconsidered its ruling but, for the reasons articulated herein, finds that Edwards' arguments are without merit. Thus, it is unclear whether Edwards still seeks an opportunity to pursue an interlocutory appeal.

"A ruling on a motion to suppress evidence in a pending criminal proceeding is interlocutory and not immediately appealable." *United States v. Challoner*, 3 F. App'x 936, 937 (10th Cir. 2001) (citing *DiBella v. United States*, 369 U.S. 121, 131, 82 S. Ct. 654, 7 L. Ed. 2d 614 (1962)).

11

Here, Edwards has provided no argument as to why the Court should depart from the general rule and certify the ruling as final for purposes of an interlocutory appeal. The Court sees no need to depart from the general rule.

*Conclusion*

The Court declines to alter its original ruling on the suppression issue. Edwards' Motion for Reconsideration [123] is DENIED.

SO ORDERED, this the 25th day of July, 2023.

/s/ Sharion Aycock<br>UNITED STATES DISTRICT JUDGE