IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

v.  CRIMINAL CASE NO. 1:22-CR-69-SA

JABARI OGBONNA EDWARDS and
ANTWANN RICHARDSON  DEFENDANTS

ORDER

On January 19, 2023, the Court entered an Order [84] denying, among other things, Edwards' request that grand jury transcripts be disclosed at least 35 days prior to trial. Now before the Court is Edwards' Motion to Reconsider [129] that ruling. The Motion [129] is ripe, and the Court is prepared to rule.

*Summary of Original Ruling*

Although it will not recite in full its previous ruling, the Court will first note the general substance of its denial of Edwards' request for disclosure of grand jury transcripts. In the previous Order [84], the Court summarized Edwards' position as follows:

> To support his request, Edwards contends that "in order . . . to determine, as part of his defense, what statements the grand jury witnesses attributed to him, and which are not, disclosure is necessary. The same holds true as to what 'agreement' the grand jury witnesses contended existed between he and another." [68] at p. 2. Edwards further asserts that, despite having reviewed thousands of pages of discovery, he "is unable to find any evidence supporting a conspiratorial 'agreement' between he and another to 'pursue an unlawful objection' or a 'voluntary agreement to join' a conspiracy." *Id*. He additionally asserts that he is entitled to the transcripts so that he can impeach any witnesses who make any inconsistent statements at trial.

[84] at p. 17.

The Court rejected Edwards' contentions. In doing so, the Court noted that the pertinent language of its Scheduling Order [19], which governs certain disclosures that must be made in connection with witness statements, provides:

> 8. Witness statements.
>
> (a) At least 7 days before trial the parties must provide to one another all statements of prospective witnesses intended to be called during each party's case-in-chief as defined by Fed. R. Crim. P. 26.2 and 18 U.S.C. § 3500(e), *including a witness's testimony before the federal grand jury*.
>
> (b) Counsel for the parties must hold and use all statements of prospective witnesses as contemplated by Rule 26.2 and 18 U.S.C. § 3500(b) and (c), and may not show them to any person, except the representatives and agents of the parties. Counsel, and representatives and agents of the parties must retain the statements and any copies of them. This provision does not prohibit a party from showing a witness his or her statement in preparation for any hearing or trial.

*Id*. at p. 18 (citing [19] at p. 2) (emphasis added).

As this language makes clear, Edwards is entitled to receive grand jury transcripts—"at least 7 days before trial"—for the testimony of any witness the Government intends to call at trial. *Id*. The Court then concluded that Edwards had failed to establish "the existence of a 'particularized need' for [the grand jury transcripts] which is in any way different than that of any criminal defendant." *Id*. at p. 19. Therefore, the Court declined to order that the grand jury transcripts be disclosed earlier than seven days before trial.

*Applicable Standard*

"The United States Supreme Court has established a long-standing policy of secrecy regarding grand-jury proceedings." *United States v. McFadden*, 2018 WL 7018711, at *2 (E.D. Tex. Oct. 3, 2018) (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958)). Of course, this is because "[t]he proper function of the grand jury

system depends upon the secrecy of the grand jury proceedings." *United States v. Miramontez*, 995 F.2d 56, 59 (5th Cir. 1993) (citing *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218, 99 S. Ct. 1667, 60 L. Ed. 2d 156 (1979)). "The burden is on the party seeking disclosure to show that 'a particularized need' exists for the materials that outweighs the policy of secrecy." *Id.* (quoting *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400, 79 S. Ct. 1237, 3 L. Ed. 2d 1323 (1959)).

*Discussion*

In his present filing, Edwards first claims that "[t]he lead investigative agent's credibility has come into question because of his testimony under oath before this Court on April 11-12, 2023, at Edwards' suppression motion hearing." [130] at p. 2. In making this allegation, Edwards refers to SIGTARP Agent Rich Vignogna. Edwards then raises several issues with Agent Vignogna's testimony at the suppression hearing and his general conduct associated with the case. The Court will address these allegations in turn.

Edwards begins by addressing Agent Vignogna's testimony regarding the failure to record Edwards' post-arrest interview. In particular, Edwards argues:

> Under oath the [sic] Agent Vignogna said, "we don't get into the business of audio-recording defendants, transcriptions — you know, transcriptions. We don't have the means to have folks transcribe recordings. Video we've never done. So, you know, it just wasn't our protocol to handle audio or video." Yet, on May 25, 2022, President Biden enacted his Executive Order on advancing effective, accountable policing and criminal justice practices to enhance public trust and confidence. Section 13 of the Executive Order addressed body-worn cameras by federal law enforcement agencies.
>
> Expressly, the Executive Order provided, "As soon as practicable, but no later than 90 days from the date of this order, the heads of Federal LEAs shall ensure that their respective agencies issue policies with requirements that are equivalent to, or exceed, the requirements of the policy issued by the DOJ on June 7, 2021,

3

> requiring heads of certain DOJ law enforcement components to develop policies regarding the use of BWC [body worn camera] recording equipment. In 2023, the Agent was still misstating the policy of his department.

[130] at p. 2-3 (citations omitted).

Edwards' argument on this point is flawed for multiple reasons. First, the argument assumes that a policy regarding the use of body worn cameras is synonymous with a policy regarding the recording of custodial statements (such as Edwards' interview). Despite making this assumption, Edwards has provided nothing to indicate that such policies would be treated interchangeably. Secondarily, in his testimony, while Agent Vignogna used some words in the present tense, the ultimate conclusion he provided was "it just *wasn't* our protocol to handle audio or video." *Id*. at p. 2 (emphasis added). Edwards has provided nothing to indicate that SIGTARP even had in place a body worn camera policy at the time of the interview on June 16, 2022—since, notably, President Biden's Executive Order dated May 25, 2022 (approximately three weeks earlier), provided agencies 90 days to implement those policies. Edwards' argument on this point is squarely rejected.

Next, Edwards attacks Agent Vignogna's testimony at the suppression hearing regarding his failure to testify that, during the arrest, he heard Edwards say "call my lawyer, Wil Colom" or "call Colom." [130] at p. 3. The Court finds this argument unavailing as it pertains to a request for the disclosure of grand jury transcripts. Certainly, Edwards will have an opportunity to cross-examine Agent Vignogna on that issue at trial, but it provides no basis for early disclosure of grand jury transcripts. Edwards, notably, provides no argument as to how a credibility issue of this nature would warrant early disclosure.

Edwards then moves to "errors and omissions . . . by Agent Vignogna under oath in an affidavit to get a search warrant in this case." *Id*. Edwards quotes paragraphs 42-44 of Agent

4

Vignogna's affidavit and provides separate arguments as to each paragraph. In paragraph 42, Agent Vignogna testified as follows:

> 42. Approximately 30 days after the second PPP loan was funded, on March 4, 2021, ASSS [American Sentry Security Services] completed the purchase of NAS's contracts. ASSS received all NAS's contracts, remaining uniforms, and limited number of vehicles in exchange for $260,000. [Christina] Steadman signed the agreement for ASSS, and Richardson for NAS.

[129], Ex. 4 at p. 14.

For context, as explained more fully in the Court's previous Order [84], the Government's theory of the case is that Edwards and Richardson fraudulently obtained PPP and EIDL funds for their business, North Atlantic Security ("NAS"), but that they made misrepresentations on the loan documentation and never intended to use the funds for NAS and, in fact, already planned to cease NAS' operations at the time they applied for the loans. NAS' contracts were sold to ASSS shortly after PPP funds were transferred to NAS' account. As set forth in the affidavit, Christina Steadman is a former employee of NAS. In 2020, she took over the comptroller duties for J5 Solutions (another business in which the Defendants were involved), and one of her duties associated with that job was to make payroll for NAS. *See* [129], Ex. 4 at p. 11.

In arguing that Agent Vignogna's inclusion of paragraph 42 in his affidavit was improper, Edwards contends:

> Agent Vignogna knew that the PPP application was submitted on January 10, 2021, and funded on January 21, 2021, which made NAS's PPP funds eligible for January and February 2021 payrolls. Yet, his affidavit, by stating "approximately 30-days after the second PPP loan was funded" purported to eliminate weeks of payroll eligibility. Based on SBA criteria, the loan was designed for 2.5 months of expenses, only 60% had to be spent on payroll to be forgiven. . . The affidavit exaggerates the shortness of the period to fit the agent's narrative. Further, the Affidavit falsely states that Steadman signed the agreement for ASSS to purchase NAS[']

5

> contract[s] when the document actually showed Jim Bell's name and signature.

[130] at p. 4.

Thus, Edwards' first point of contention is apparently that the affidavit, when referring to the time period between January 21, 2021 and March 4, 2021 (a period of 42 days), said "approximately 30 days." [129], Ex. 4 at p. 14. Simply stated, this argument is a non-starter. Edwards will certainly be permitted to question Agent Vignogna at trial about the contents of his affidavit, but the Court does not see this minor discrepancy as a basis for the narrow relief at issue in the present Motion [129]—the alleged need for early disclosure of grand jury transcripts.

His second contention as to this paragraph concerns who signed the asset purchase agreement. Edwards attached to his Motion [129] an asset purchase agreement between J5 GBL, LLC (another one of the Defendants' businesses) and James Bell. This document was indeed signed by James Bell on behalf of the buyer and Antwann Richardson on behalf of J5 GBL. Conversely, the Government attached to its Response [135] an asset purchase agreement between ASSS (as buyer) and NAS (as seller). That document was signed by Steadman on behalf of the seller. And notably, the Government apparently believes that the document attached to Edwards' Motion [129] is fraudulent, specifically alleging: "[w]hile the undersigned is still trying to sort out the details pertaining to the document attached to the defendant's motion as Exhibit 'G,' the government understands that document to be a fraudulent agreement created by the defendants after the sale, in an effort to obtain more money from Steadman and Bell, after the defendants determined they had not asked for enough money in the sale of NAS." [135] at p. 3-4.

Candidly, the Court has not been provided a sufficient explanation as the connection between the person who signed the asset purchase agreement and the need for early disclosure of grand jury transcripts. The issues the parties raise in connection with these documents may,

6

assuming their admissibility, be addressed at trial, but the Court cannot see how they support the specific relief at issue now. This argument is rejected.

Edwards next attacks paragraph 43 of Agent Vignogna's affidavit, which provides:

> 43. At the time of the agreement, Steadman did not know that NAS had received PPP funds and ASSS never received any of the funds from the second PPP loan.

[129], Ex. 4 at p. 4.

Edwards contends that this statement cannot be correct because Steadman helped prepare the PPP applications on behalf of NAS and served as NAS' comptroller and prepared NAS' payroll for the months of January and February 2021. Thus, according to Edwards, there is no way Steadman would not have known that NAS received PPP funds in January 2021. In this portion of his filing, Edwards also states that Agent Vignogna left out of his affidavit a specific statement attributable to Steadman, wherein Steadman apparently said that Edwards had stated to her that "he did not want to take the loan if the company was not entitled to it and that there were companies out there that would need it for future cost." [130] at p. 5.

The Government does not dispute that Steadman assisted in preparing the loan application paperwork for NAS. However, the Government takes the position that "[s]ince the NAS PPP funds left the NAS account shortly after they were received, Steadman may not have known that NAS received PPP funds in January." [135] at p. 5. The Government concedes that this is an issue that can certainly be addressed at trial through questioning of Steadman but contends that it does not warrant early release of grand jury transcripts. Stated simply, the Court agrees. This is a factual issue that may support Edwards' defense at trial, but it does not provide a basis for early release of the grand jury transcripts.

7

As to Edwards' argument about his statement that he did not want to take the loan if the company was not entitled to it, the Government contends that "[w]hile Edwards may have made this statement, other actions of Edwards show him to be an active participant in the alleged fraudulent activities." [135] at p. 6. For example, the Government emphasizes that, almost immediately after the PPP funds were transferred to NAS' account, Edwards transferred them to the J5 Solutions account and ultimately converted the funds for his own personal benefit.

The Court again finds that while this topic is one that will certainly be addressed at trial, there is no connection between it and the need for early disclosure of grand jury transcripts.

Next, Edwards addresses paragraph 44 of the affidavit, wherein Agent Vignogna testified:

> 44. Steadman left her position with J5 Solutions after the purchase of the NAS contracts. When Steadman left her position with J5 Solutions, Edward[s] had moved the operations of J5 Solutions, J5 GBL, The Bridge Group, BH Properties, and Build Development Group to 605 2nd Avenue North, Columbus, Mississippi[.]

[129], Ex. 4 at p. 4.

Candidly, Edwards' argument as to this paragraph is unclear to the Court. He notes that Steadman did leave NAS but not until June 29, 2021—a little less than four months after the NAS contracts were sold. His issue is presumably with the wording of this paragraph. However, yet again, the Court sees no connection with Edwards' argument and the need for early disclosure of the grand jury transcripts.

After addressing the above-referenced paragraphs, Edwards' arguments shift to other substantive issues. Specifically, Edwards completed an affidavit, wherein he provides a summary of statements that Agent Vignogna made during a meeting held on July 21, 2022—approximately one month after Edwards was indicted. *See* [129], Ex. 9. According to Edwards, on that date, he and his former attorney, Donna Smith, Esq., met with counsel for the Government and Agent

8

Vignogna. Edwards alleges that Agent Vignogna, during that meeting, told Edwards that the investigation did not begin with Edwards but, rather, that the investigation began with Robert Smith, the Mayor of Columbus, Mississippi. Edwards further testified via affidavit that Agent Vignogna "stated that 'even if takes me another six months, I am going to get [Smith], and you can tell him I said it.'" *Id*. at p. 3.

While Edwards may be entitled to address at trial issues associated with Agent Vignogna's motivation for the investigation, that is a separate issue from the disclosure of a grand jury transcript—the *narrow* issue currently before the Court. The Court simply sees no connection between Agent Vignogna's purported statements during a July 21, 2022 meeting and the need for disclosure of grand jury transcripts. And, notably, Edwards cites no authority to support such a connection.

After referencing each of these arguments, Edwards concludes by alleging that disclosure of the grand jury transcripts "will allow Edwards to show how the prosecution exploited the vagueness and evolving regulations in the PPP and EIDL programs, particularly as to 'permissible expenses' for businesses, use of money between affiliated businesses, and the nature of 'adverse change,' when the very purpose of the programs was to provide aid to businesses suffering hardship." [130] at p. 7.

In making this argument, Edwards again conflates credibility issues at trial and jury arguments with a request for early disclosure of a grand jury transcript. He has raised no arguments explaining why there is a *particularized* need in *this* case for the transcripts to be disclosed early. For instance, should Edwards desire to attempt to impeach Agent Vignogna's trial testimony based upon a statement he made to the grand jury, he will undoubtedly be provided an opportunity to do so. He does not need the transcripts to be disclosed early to do so.

As emphasized in the Court's original Order [84], Edwards is entitled, per this Court's Scheduling Order [19] to disclosure of the grand jury transcripts for any witness the Government intends to call at trial at least seven days prior to trial. This is, notably, more than Edwards is entitled to statutorily, pursuant to 18 U.S.C. § 3500, which only mandates disclosure of such transcripts *after* the witness has testified. He has done nothing to show that the Court should order the disclosure of the transcripts even sooner.

*Conclusion*

For the reasons set forth above, the Court declines to alter its original ruling as it pertains to the disclosure of grand jury transcripts. Edwards' Motion for Reconsideration [129] is DENIED.

SO ORDERED, this the 25th day of July, 2023.

/s/ Sharion Aycock  
UNITED STATES DISTRICT JUDGE