IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

V.   CASE NO. 1:22-CR-69-SA

JABARI OGBONNA EDWARDS
and ANTWANN RICHARDSON   DEFENDANTS

ORDER

Now before the Court are three separate Motions [191, 194, 206], all of which Jabari Edwards filed. The Motions are ripe for review. The Court will address each of them separately.

    I.    *Second Motion to Reconsider Suppression Ruling [191]*

On April 11-12, 2023, the Court held a two-day hearing on Edwards' Motion to Suppress [87]. The testimony at that hearing concerned certain alleged statements that Edwards made to Agents on June 16, 2022, following his arrest. At the conclusion of the hearing, the Court denied suppression. On May 5, 2023, Edwards filed a Motion for Reconsideration [123]. The Court denied that request on July 25, 2023. *See* [145]. Now, Edwards asks the Court (for a second time) to reconsider its ruling.

    A.    Standard

"Motions to reconsider in criminal cases are judicial creations not derived from any statute or rule." *United States v. Jefferson*, 2022 WL 1001449, at *1 (E.D. La. Apr. 4, 2022) (quoting *United States v. Salinas*, 665 F. Supp. 2d 717, 720 (W.D. Tex. 2009)). "Although the Federal Rules of Criminal Procedure do not explicitly authorize motions for reconsideration, district courts possess continuing jurisdiction over criminal cases and are free to reconsider their earlier decisions." *Id*. (citing *United States v. Scott*, 524 F.2d 465, 467 (5th Cir. 1975)). This principle "is applicable to suppression motions." *United States v. Moss*, 2013 WL 55862, at *1 (E.D. La. Jan. 3, 2013) (citing *United States v. Palmer*, 122 F.3d 215, 221 (5th Cir. 1997)).

B. *Analysis*

In his first Motion to Reconsider [123], Edwards focused in large part on the failure of Agents Vignogna and Bohmer to record his alleged statement. As noted above, the Court rejected those arguments on July 25, 2023. *See* [145].

In his present filing, Edwards frames the issue as follows: "[r]ecently, Edwards received the notes of Agent Bohmer, which he believes so undermines his credibility that his testimony at the hearing on April 11-12, 2023, should be disregarded by the Court." [191] at p. 2.

Additional context is needed. Following the June 16, 2022 interview with Edwards, Agent Bohmer prepared a Memorandum of Investigative Activity ("MOIA") dated June 23, 2022. At the suppression hearing, Agent Bohmer testified as follows regarding his personal notes from the interview and his preparation of the MOIA:

> Q. And, again, I'm not trying to beat you up. I just need you to answer the question. Is your transcription from your recollection as accurate, in your opinion, as a video or audio recording of an interview?
>
> A. It wouldn't have every breath. It wouldn't have every sigh, but it would have the information that would have been recorded in words.

[116] at p. 18.

Agent Bohmer also testified that he prepared the MOIA and that he did not use Agent Vignogna's notes in the preparation of it. Utilizing Agent Bohmer's testimony that his notes would contain the relevant information from the interview, Edwards emphasizes the following information that appears in the MOIA but does *not* appear in his personal notes:

> 1. Edwards stated that he is very familiar with the PPP program.
>
> 2. Edwards stated that he used $260,000 from a PPP loan to pay past due payroll taxes.
>
> 3. Edwards acknowledged that he paid Hunter with EIDL

2

> moneys which were intended for his businesses[.]
>
> 4. Edwards was disappointed with Richardson and stated that Richardson's actions were fraudulent. Edwards added that his mindset is that of one that is able to "work out of it" with regards to his issues with Richardson.
>
> 5. Edwards admitted that the moneys for the "I love you" checks came from the monies he received from PPP and or EIDL[.]
>
> 6. Due to the financial issues facing the company, Richardson and Edwards decided that it would be better to sell the company.
>
> 7. Edwards acknowledged that the EIDL was a loan that needed to be paid back and was meant to be used to build back the business after the pandemic, not for $20,000 and $30,000 bonus checks[.]

[191] at p. 4.

Emphasizing the fact that this information appears in the MOIA but not in Agent Bohmer's personal notes from the interview, Edwards argues:

> The MOIA quotes Edwards, giving the exact date he signed an application for PPP 18 months earlier (January 10, 2021) and recalling the exact number of employees (85) and the amount of the payroll ($227,000). The alleged MOIA statement by Edwards has such precision even though Mr. Edwards had no documents in front of him. Yet, these same dates and figures appear in the indictment. Edwards submits that these are fabrications, and the Agent's falsifying statement [sic] claimed to have been made by Edwards. There is support for this conclusion. Another explanation for all this high level of detail is that Edwards did not say those things, and the MOIA was simply the officers fabricating the documents. For example, the MOIA quotes Edwards on page 3 as having said on June 16, 2022, the following:
>
>> Edwards listed himself as 100% owner of the business and electronically signed the application. In addition, Edwards certified that all supporting documents were true and accurate, and the funds would be used for permissible expenses.
>
> On the other hand, this is identical to the language drafted by the United States Attorney's office three days earlier in paragraph 27 of

3

the indictment, which reads:

> Edwards listed himself as 100% owner of the business and electronically signed the application. In addition, Edwards certified that all supporting documents were true and accurate, and the funds would be used for permissible expenses.
>
> Exactly same words, same order, and same punctuation. Is it Edwards' statement or the fabrication of the agents?
>
> Further, this language does not appear in Agent Bohmer's notes. It appears that the agent simply cut and pasted the language from the indictment and put it into the mouth of Edwards, his confession! That is unless Edwards speaks exactly like the attorneys in the United States Attorney's office. What is apparent here is that the MOIA is not an accurate record of the statements given by Edwards but rather a document fabricated by an agent intent on manufacturing a case against a target.

[191] at p. 4-5.

Thus, Edwards' contention is that Agent Bohmer completely fabricated the confession. The Government takes the position that Edwards' arguments twist Agent Bohmer's testimony, emphasizing that it is certainly not reasonable to believe that every single word in the MOIA would appear in Agent Bohmer's handwritten notes and, further, that "it is not unusual or troubling that one sentence of the MOIA is identical to the indictment or that other statements in the MOIA reflect details of the indictment. The federal agents had the indictment and some of Edwards' loan applications at the time they interviewed Edwards. The indictment and loan applications naturally formed a template for the questioning in the interview, with the agents asking Edwards over and over again whether the information contained in the indictment was correct." [196] at p. 2.

The Court agrees with the Government. Edwards' arguments go to the credibility of Agent Bohmer and may be appropriate for cross-examination at trial, but Edwards has not shown any basis for suppression of the confession altogether. He has cited no authority to indicate that suppression would be appropriate under these circumstances, and this Court is likewise unaware

4

of any such authority. Rather, this is a credibility issue for a jury—not this Court—to decide. The Motion [191] is DENIED.

    II.    *Motion to Reconsider Disqualification of Wilbur O. Colom, Esq. [206]*

On December 12, 2023, the Court entered an Order and Memorandum Opinion [201] wherein it, among other things, disqualified Wilbur Colom, Esq. from representing Edwards in this case. The Court provided extensive reasoning for its conclusion. Specifically, the Court discussed a potential conflict involving Sophia Erby, Colom's business dealings with Edwards, and the potential impact that Colom's involvement as Edwards' counsel would have on Richardson.

Now, Edwards asks the Court to reconsider. As to Erby, Edwards contends that "if Erby testifies at trial, her examination, whether direct or cross, will not be performed by Mr. Colom, but instead by [Chandler Rogers, Esq. (Edwards' current counsel)]. Accordingly, the situation of Mr. Colom examining his own employee will not occur and there is no scenario where the concern of Mr. Colom's loyalties being divided will be present." [207] at p. 2-3.

This fact alone does not absolve the Court's concern. In fact, an erection of a "Chinese Wall" between counsel in a situation involving a potential conflict was the issue the Fifth Circuit addressed in *Gharbi* where it affirmed the district court's refusal to allow defense counsel to associate co-counsel because of a potential conflict of interest. *United States v. Gharbi*, 510 F.3d 550, 552-53 (5th Cir. 2007). Whether or not Colom actually conducts the potential direct examination or cross examination of Erby, the fact that she is his own employee creates a potential situation of "divided loyalties" for Edwards' defense team—the same concern the Fifth Circuit recognized in *Gharbi*. *Id*. at 554.

As the Court noted in its previous Order and Memorandum Opinion [201], "the potential conflict involving Erby and Colom—regardless of whether the Defendants openly identify it—

5

gives this Court concern." [201] at p. 11.

Next, the Court turns to Colom's involvement in Edwards' businesses. The Court addressed this issue at length in its previous ruling. After noting the issue with the Court Square Tower property, the Court explained:

> The Court's biggest concern with Edwards and Colom's other business dealings is Colom's representation of Edwards' businesses—both in other civil litigation, as well as in this criminal case. In his Response [143], Edwards argues that "[r]epresenting an individual and his companies simultaneously does not present a conflict of interest for a lawyer." [143] at p. 2. Edwards cites no authority for this sweeping contention.
>
> Despite Edwards' unsupported contention, the Court can envision several scenarios wherein simultaneous representation of an individual and the individual's corporate entities could in fact create a conflict of interest. Stated differently, it is quite possible that an entity may not have identical interests to those of an individual owner.
>
> Colom's involvement in Edwards' businesses, which apparently continues to this day, gives this Court concern as it pertains to Colom representing Edwards in this case.

[201] at p. 13-14.

Now, Edwards asserts that "[w]hile it is true that Mr. Colom has represented Edwards in civil litigation in the past, and is assisting lead attorney, Joseph Long, in the case pending in Louisiana on behalf of North Atlantic Securities, Corky Smith has acted as the primary attorney for Edwards' businesses." [207] at p. 4. Edwards also cites the commentary to the Mississippi Rules of Professional Conduct for the proposition that "a lawyer for an organization may also represent a principal officer or shareholder." *Id*.

Although Edwards now tries to downplay Colom's involvement in his personal business affairs, the Court is unpersuaded. As indicated previously, the Court addressed this issue at length earlier. Colom is so intertwined with Edwards' businesses that he has previously met with the Government as a potential witness in this criminal prosecution. The Court's concerns persist.

6

Lastly, Edwards contends that the Court should reconsider its ruling as it pertains to Richardson. Attached to Edwards' filing is a waiver wherein Richardson waives any potential conflict of interest with Colom's involvement. Edwards then argues:

> As to the Court's acknowledgement of Edwards and Richardson's positions within the Edwards entities, there is no debate that Richardson has served as an officer in several of Edwards' entities; however, at the time of the indictment Richardson maintained no ownership interest, as a shareholder or member, in any of Edwards' entities. With respect to any information learned by Mr. Colom from Richardson in representing the Edwards entities, Richardson has affirmed that no such information is harmful to him in this case.
>
> Edwards appreciates the Court's concern about divergent interests arising at trial wherein one Defendant may attempt to cast blame on the other, but these two (2) individuals have maintained from the inception of this case that neither committed any criminal act and that neither will fabricate allegations against the other which are simply untrue. In other words, the Defendants take the position that pointing the finger at the other would be to lie to the Court and the jury.

[207] at p. 5.

In the previous Order and Memorandum Opinion [201], the Court addressed in detail its concerns with Colom's involvement in this case and the impact that it could have on Richardson. The fact that Richardson has now signed a waiver does not change this Court's view. *See, e.g.*, *Gharbi*, 510 F.3d at 553 ("If a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver."). Although the Defendants now (and have since the inception of this case) contend that their interests will not diverge at trial, this Court has no way of knowing whether or not the Defendants' position on that issue will change as the proof is developed at trial. The Fifth Circuit has recognized this concern and provided district courts substantial latitude in this area. *Id*. ("Because the likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, we afford the district court substantial latitude in refusing

7

a waiver where a potential conflict may or may not develop into an actual conflict at trial.").[1]

The Court is well aware that part of Edwards' Sixth Amendment rights is the right to retain the attorney of his choice. *Gharbi*, 510 F.3d at 553. However, the Court is likewise aware that the right to counsel of choice is not absolute and that the Court itself maintains an "*independent* interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Gharbi*, 510 F.3d at 553 (emphasis added). Although Edwards has attempted to rebut the Court's concerns with Colom's involvement, the Court is not satisfied that Colom can provide conflict-free counsel in this case. Edwards is represented by able, qualified counsel in Chandler Rogers. Colom will remain disqualified. The Motion to Reconsider [206] is DENIED.[2]

    III.    *Motion for Inquiry Into Grand Jury Proceedings and to Dismiss Indictment [194]*

In this Motion [194], Edwards makes significant and serious allegations against the Government and the investigation of this matter. He contends that "[t]his investigation and prosecution of Defendant Edwards has been contaminated from its origins to date and is so replete with misconduct that dismissal and referral to the Department of Justice is the only remedy." [195] at p. 7. Contending that the investigation of this matter was politically motivated and replete with

---

[1] The Court notes that the MOIA that Agent Bohmer prepared on June 23, 2022 indicates in pertinent part that "Edwards was disappointed with Richardson and stated that Richardson's actions were fraudulent. Edwards added that his mindset is that of one that is able to 'work out of it' with regards to his issues with Richardson." [191] at p. 4. This is, in the Court's view, at least somewhat indicative of a potential for Edwards and Richardson's respective interests to diverge at trial. Although the Court has no way of knowing now whether the same will occur, the *potential* for divergent interests is the focus of this Court's inquiry.

[2] Although it did not address the issues in great detail in the Order and Memorandum Opinion [201], the Court did acknowledge that Colom, at the Defendants' initial appearance, advised Magistrate Judge Percy that "he did not represent either of the Defendants (and that he would not do so)" yet he "spoke on behalf of both of them when he advised the Court that the Defendants already had an opportunity to review the charges against them in the original Indictment [1]." [201] at p. 15. The Court continued by noting that it was "unaware of what conversations, if any, that Colom had with Richardson regarding those charges prior to the hearing, but it is clear that Colom spoke on behalf of Richardson at the hearing. This, too, gives the Court concern." *Id*. This fact still gives the Court concern as it pertains to Colom now potentially representing Edwards.

racial profiling, Edwards requests that the Court "grant him access to the grand jury transcript in this matter, or at a minimum, this Court conduct an in-camera review of the grand jury transcripts prior to denying Edwards' request. After sufficient time to review same Edwards request[s] that the Court conduct a hearing on this motion where Edwards may request a dismissal of the indictment in this matter." *Id*. at p. 14.

Edwards has previously sought disclosure of grand jury transcripts via a Motion [67] filed on December 14, 2022. At that time, Edwards contended that disclosure of the transcripts was necessary so that he could adequately prepare his defense. The Court denied that request in an Order [84] dated January 19, 2023.

"The United States Supreme Court has established a long-standing policy of secrecy regarding grand-jury proceedings." *United States v. McFadden*, 2018 WL 7018711, at *2 (E.D. Tex. Oct. 3, 2018) (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958)). Of course, this is because "[t]he proper function of the grand jury system depends upon the secrecy of the grand jury proceedings." *United States v. Miramontez*, 995 F.2d 56, 59 (5th Cir. 1993) (citing *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218, 99 S. Ct. 1667, 60 L. Ed. 2d 156 (1979)). "The burden is on the party seeking disclosure to show that 'a particularized need' exists for the materials that outweighs the policy of secrecy." *Id*. (quoting *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400, 79 S. Ct. 1237, 3 L. Ed. 2d 1323 (1959)).

In his present filing, Edwards heavily criticizes the underlying investigation in this case. After explaining that the investigation began with SIGTARP Agents looking into the City of Columbus Blight Program, Edwards asserts that "[b]ased upon what appears to be nothing, in July 2021, without any information that would convince a judge in the United States District Court for the Northern District of Mississippi to issue subpoenas, agents obtained subpoenas via the grand

9

jury for not only the Edwards' company contracting with the City for the Blight Program, but to every one of his accounts and companies, all 17 of them, covering all personal and business activity." [195] at p. 9. Edwards characterizes this conduct as a "dragnet" of subpoenas. *Id*.

He then notes that prior to the filing of the original Indictment [1] on June 15, 2022, only five individuals were questioned: Christina (Tina) Steadman, James (Jim) Bell, Pat Davidson, Shannon Cosby, and Melanie Cole. Edwards emphasizes that "[t]he agents and prosecutors decided to interview all these select white management employees of the company, including the companies [sic] outside accountant, but not one of the current management employees. . . Of some note here the agents only interviewed white employees and consultants. Not even one black former employee, of which there were many, was interviewed, evidently because black witnesses could not be trusted. No employee of the city Blight Program was interviewed, [] nor any documents obtained to assess any potential wrongdoing in the program." *Id*. at p. 10. Edwards contends that the Court should pay particular attention to the fact that the Agents interviewed Cole "because it demonstrates clearly that the agents were avoiding black witnesses but interviewing whites, with possible grievances, who had almost no first-hand information." *Id*.

Edwards then contends that the entire investigation was politically motivated in an attempt to obtain a conviction in any way possible:

> Keep in mind that Agent Vignogna had decided Columbus, MS was "corrupt," but he had no evidence, so he and others decided that they would get the officials through the Blight Program and Jabari Edwards. They found nothing in this inquiry. With no basis, they induced a grand jury to look into all of Mr. Edwards['] accounts (probably other officials also) based upon non-existent corruption in the Blight Program. They found nothing. Then for a year, they monitored 17 accounts of Mr. Edwards during a period when all businesses were suffering from a curtailment of activity as a result of COVID-19.
>
> The PPP and EIDL investigations became a tool, not to protect the government's funds, but a cudgel against Edwards in order to get other local officials they sought to charge.

> The government accuses Edwards of having a fraudulent scheme when in truth they had the real unlawful scheme.
>
> In order to get the Grand Jury to indict Mr. Edwards, the government had to overlook compelling evidence and hide certain evidence from them. Also, they had to misrepresent the rules applicable to the PPP and EIDL Programs, or simply not tell the grand jury the rules.

[195] at p. 11-12.

Edwards then contends that he is entitled to disclosure of the grand jury transcripts because the same will provide the basis for a motion to dismiss the charges.

The Government responds to each of the allegations, noting first that while the investigation began as an inquiry into the Blight Program, it morphed into an investigation into PPP and EIDL loans. As to the individuals who were interviewed prior to the filing of the Indictment [1], the Government notes that Steadman and Bell were the purchasers of North Atlantic Security's assets so interviewing them was a natural decision as part of the investigation. Davidson served as the Defendants' accountant—thus, according to the Government, he had knowledge of the relevant financial transactions. The Government notes that Cole was a former employee of one of Edwards' businesses who "did not have any useful information as she was not called to testify before the grand jury and is not on the government's witness list for trial." [197] at p. 7. No information is provided by either party as to Shannon Cosby (the other individual who was interviewed), other than her being a former North Atlantic Security employee. Edwards has not shown that race was utilized in the Agents' decisions as to who to investigate and, more importantly, how the same would warrant disclosure of grand jury transcripts.

As emphasized above, "the burden is on the party seeking disclosure to show that a particularized need exists for the materials that outweighs the policy of secrecy." *Miramontez*, 995 F.2d at 59 (citations and quotation marks omitted). Edwards has identified no particularized need here. He has made allegations of serious misconduct, but allegations alone are insufficient to

11

warrant the requested relief.

As the Court noted in its January 19, 2023 Order [84], the Defendants are entitled to disclosure of certain witness statements, as set forth in the Scheduling Order [19], which in pertinent part provides:

> 8. Witness statements.
>
> (a) At least 7 days before trial the parties must provide to one another all statements of prospective witnesses intended to be called during each party's case-in-chief as defined by Fed. R. Crim. P. 26.2 and 18 U.S.C. § 3500(e), *including a witness's testimony before the federal grand jury*.
>
> (b) Counsel for the parties must hold and use all statements of prospective witnesses as contemplated by Rule 26.2 and 18 U.S.C. § 3500(b) and (c), and may not show them to any person, except the representatives and agents of the parties. Counsel, and representatives and agents of the parties must retain the statements and any copies of them. This provision does not prohibit a party from showing a witness his or her statement in preparation for any hearing or trial.

[19] at p. 2 (emphasis added).

Edwards has not shown that he is entitled to any disclosure beyond that. The Motion [194] is DENIED.

*IV. Conclusion*

For the reasons set forth above, each of the Motions addressed herein [191, 194, 206] are DENIED.

SO ORDERED this the 13th day of March, 2024.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE